UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:24-cv-81294-LEIBOWITZ

ANDREA MADACSI,

    *Plaintiff,*

v.

CITIBANK, N.A.,

    *Defendant.*

_____/

## ORDER

THIS CAUSE comes before the Court on Defendant Citibank, N.A.'s Motion to Compel Arbitration and Stay All Court Proceedings (the "Motion") [ECF No. 17], filed on October 23, 2024. For the foregoing reasons, the Motion is GRANTED.

## BACKGROUND

*Pro se* Plaintiff Andrea Madacsi ("Plaintiff") filed this action in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida. [Am. Compl., ECF No. 1-3]. On October 16, 2024, Defendant Citibank, N.A. ("Defendant" or "Citibank")) removed the case to the Southern District of Florida based on diversity jurisdiction. [ECF No. 1].

Plaintiff brings a three-count complaint against Defendant, alleging violations of the Electronic Fund Transfer Act, 15 U.S.C. § 1693, the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801, and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201. [ECF No. 1-3 at 10–11]. Plaintiff alleges that Defendant refused Plaintiff's request that Defendant "unblock: her credit card despite her compliance with Citibank's procedures, causing significant financial losses and emotional distress. [*Id.* ¶ 3]. Plaintiff alleges Defendant failed to update her mailing address,

resulting in confidential financial documents being sent to an outdated address, and discovered that her financial data was outsourced by Citibank to foreign-based customer service representatives where U.S. privacy laws do not apply, resulting in an increased risk of data breaches. [*Id.* ¶¶ 4–6]. Beyond this, Plaintiff's allegations include general statements of the consequences of Citibank's behavior on national security and data privacy. [*Id.* ¶¶ 9–13].

Defendant now moves to compel arbitration, claiming that this dispute is over a Citibank account that Plaintiff opened which is governed by a "Client Manual" that contains a binding and enforceable arbitration agreement which Plaintiff agreed to by opening the account. [Mot., ECF No. 17 at 1–2]. Plaintiff responds in a general fashion claiming, in relevant part, that the arbitration clause is substantively unconscionable, and would cause undue financial burdens on her. [Resp., ECF No. 18 at 2–4]. Much of Plaintiff's response discusses irrelevant fines that have been levied on Citibank in other cases and purported national security risks of Citibank's behavior, which this Court does not consider. In reply, Defendant argues that Plaintiff has not disputed that she is subject to a valid arbitration agreement, that the arbitration agreement delegates the threshold determination to an arbitrator, and that Plaintiff's arguments on unconscionability are meritless. [Reply, ECF No. 22]. This Court will address the relevant arguments in turn.

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. "Confronted with a facially valid arbitration agreement, district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Calcaterra*

*v. Baptist Health S. Fla., Inc.*, No. 1:23-CV-20364-KMM, 2024 WL 2109349, at *2 (S.D. Fla. May 9, 2024) (emphasis in original); 9 U.S.C. § 3. "A motion to compel arbitration is treated generally as a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." *Calcaterra*, 2024 WL 2109349, at *2 (citing *Shea v. BBVA Compass Bancshares, Inc.*, 2013 WL 869526 at *2 n.3 (S.D. Fla. Mar. 7, 2013)). Thus, a court "may consider matters outside the four corners of the complaint." *Id.* (citing *Mamani v. Sanchez Berzain*, 636 F. Supp. 2d 1326, 1329 (S.D. Fla. 2009)). Courts should only compel arbitration if (a) the agreement is enforceable under "ordinary state-law contract principles" and (b) the claims before the court fall within the scope of that agreement. *Lambert v. Signature Healthcare*, LLC, No. 19-11900, 2022 WL 2571959, at *4 (11th Cir. July 8, 2022).

## DISCUSSION

Citibank moves to compel arbitration for the claims against it, claiming that the FAA requires Plaintiff to submit her claims against to binding arbitration. [ECF No. 17 at 5]. Plaintiff agreed to and is bound by the Client Manual because she opened an account with Citibank, the process by which requires a customer to agree to the Client Manual, and this issue is not in dispute here. [Mot. at 5 (citing Decl. of Melissa Manuel, ECF No. 17-1, Ex. A ¶ 9, 13 – 14)]; *see De Mello E Silva v. Citibank, N.A.*, No. 19-23547-CIV, 2020 WL 8115993, at *2 (S.D. Fla. Nov. 6, 2020) ("The terms governing Citibank's relationship with its customers are set forth in Citibank's Client Manual Consumer Accounts[.]"); *see also Carl v. Republic Sec. Bank*, 282 F. Supp. 2d 1358, 1365 (S.D. Fla. 2003) (describing the bank-customer relationship as "contractual" in nature). As arbitration agreements are generally enforceable, this Court will first consider whether the agreement is unconscionable and then whether Plaintiff's claims fall under it.

"Whether an arbitration provision is unconscionable is a question of state law and therefore the provision is interpreted according to state law rules of contract construction." *Valiente v. StockX, Inc.*, 645 F. Supp. 3d 1331, 1339 (S.D. Fla. 2022). "Both procedural unconscionability and substantive unconscionability must exist before the provision is unenforceable." *Id.* (citing *Golden v. Mobil Oil Corp.*, 882 F.2d 490, 493 (11th Cir. 1989)).

"Procedural unconscionability focuses on (1) the manner in which the contract was entered into; (2) whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the complaining party had a realistic opportunity to bargain regarding the terms of the contract; and (4) whether he or she had a reasonable opportunity to understand the terms of the contract." *Valiente*, 645 F. Supp. 3d at 1339 (internal quotations omitted). Substantive unconscionability focuses on the "unreasonableness of the terms" in the "agreement itself." *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1157-58 (Fla. 2014); *Solis v. Am. Express Nat'l Bank*, No. 5:23-CV-208-JSM-PRL, 2023 WL 4474322, at *2 (M.D. Fla. July 11, 2023), *report and recommendation adopted*, No. 5:23-CV-208-JSM-PRL, 2023 WL 4831307 (M.D. Fla. July 28, 2023). However, while both procedural and substantive unconscionability "must be established to avoid enforcement of the terms within an arbitration agreement[,] . . . . they need not be present to the same degree." *Basulto*, 141 So. 3d at 1159 (adopting a "sliding scale" approach for unconscionability).

Here, Plaintiff agreed to the Client Manual by opening an account and chose not to opt-out of the arbitration clause in the Client Manual even though she had the option to do so. [Decl. of Melissa Manuel ¶¶ 13, 22]. These facts alone show there is no procedural unconscionability as Plaintiff chose to open an account with Citibank when there are numerous other banks, she had a meaningful choice to opt-out of the clause in question and was required to check a box agreeing

4

to the terms and conditions which included the Client Manual. [*Id.* ¶¶ 10–15]. The arbitration clause in the Client Manual is not hidden, begins in all capital letters, and is preceded by the statement "PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY." [Client Manual, ECF No. 17-1 at 65]. Based on this, Plaintiff agreed to the arbitration clause even though she had the option not to, and thus, procedural unconscionability is not present. Additionally, clickwrap agreements are generally valid and enforceable in Florida, further supporting the Court's conclusion that the Client Manual is not procedurally unconscionable. *See, e.g., Matter of Chaves*, No. 22-81648-CIV, 2024 WL 718033, at *8 (S.D. Fla. Feb. 9, 2024) (finding clickwrap agreements are generally upheld in Florida); *Salco Distributors, LLC v. iCode, Inc.*, No. 8:05 CV 642 T 27TGW, 2006 WL 449156, at *2 (M.D. Fla. Feb. 22, 2006).

While substantive unconscionability is a vague standard, because arbitration agreements have been upheld consistently in Florida, and are expressly supported by federal policy, there is no evidence here that the arbitration clause is substantively unconscionable. *See Hilton v. Fluent, LLC*, 297 F. Supp. 3d 1337, 1340 (S.D. Fla. 2018); *Sims v. Clarendon Nat. Ins. Co.*, 336 F. Supp. 2d 1311, 1325 (S.D. Fla. 2004); *Laizure v. Avante at Leesburg, Inc.*, 44 So. 3d 1254, 1257 (Fla. Dist. Ct. App. 2010), *approved*, 109 So. 3d 752 (Fla. 2013); *see generally AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

Because Plaintiff has insufficiently proven procedural unconscionability, and because there is no showing of substantive unconscionability, under Florida law, the Client Manual and the arbitration clause therein are enforceable and binding.

The valid arbitration clause states that "any claims, dispute or controversy between you and us arising out of or related to your account(s)" is subject to arbitration. [Client Manual at 65]. The clause explicitly states that all disputes are subject to arbitration "no matter what legal theory

they are based on or what remedy . . . they seek[.]" [*Id.*]. Plaintiff admits in her Amended Complaint that her claims arise out of her account with Citibank. [Am. Compl. ¶¶ 2–6, 14–16]. Thus, Plaintiff's claims indisputably fall within the scope of the arbitration clause in the Client Manual.

Finally, even though Plaintiff claims that arbitration would place "significant financial burdens on Plaintiff, which are prohibitively high for an indigent consumer," [Resp. at 4], this plainly ignores the arbitration clause's provision which states that Citibank will

> pay [Plaintiff's] share of the arbitration fee for an arbitration of Disputes of $74,000 or less if they are unrelated to debt collection. Otherwise, arbitration fees will be allocated according to the applicable AAA Rules. If we prevail, we may not recover our arbitration fees, unless the arbitrator decides your Dispute was frivolous. All parties are responsible for their own attorney's fees, expert fees and any other expenses, unless the arbitrator awards such fees or expenses to you or us based on applicable law.

[Client Manual at 66]. Therefore, Plaintiff's argument is without factual merit, notwithstanding any improbable legal merit.

Having concluded that the arbitration agreement is enforceable and Plaintiff's claims fall within the scope of the arbitration agreement, the Court concludes that Plaintiff's claims shall be heard the arbitration process detailed in the Client Manual.

## CONCLUSION

For the reasons stated above, it is **ORDERED AND ADJUDGED** Defendant's Motion to Compel Arbitration and Stay all Court Proceedings [**ECF No. 17**] is **GRANTED.** Plaintiff's claims must be heard in binding arbitration in accordance with the Client Manual. The Clerk of Court is directed to **CLOSE** this case and all pending motions are **DENIED as moot**.

6

**DONE AND ORDERED** in the Southern District of Florida on November 7, 2024.



DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc: counsel of record